IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.B. HUGHES AND ASSOCIATES<br>Plaintiff,<br><br>v.<br><br>Giunio Santi Engineering and<br>General Dynamics Electric Boat,<br>Defendants. | CIVIL ACTION NO. **'16CV0114 DMS JMA** |

**COMPLAINT FOR BREACH OF CONTRACT, MONEY HAD AND RECEIVED, CONVERSION, UNJUST ENRICHMENT AND UNFAIR COMPETITION**
**JURY TRIAL REQUESTED**

Plaintiff J.B. Hughes and Associates ("JBHA" or "Plaintiff"), through its undersigned counsel and for its Complaint against Defendants Giunio Santi Engineering s.r.l ("GSE"), an Italian firm, and General Dynamics Electric Boat ("GDEB") (collectively "Defendants"), alleges as follows:

**I.   PARTIES, JURISDICTION AND VENUE**

1. GSE is an Italian corporation having its principal place of business at Piazza Bergamo, 18, 24040 Zingonia, (BG) Italy.

2. GDEB is a Delaware corporation having its principal place of business at 75 Eastern Point Road, Groton, CT 06340-4989. The GDEB certificate of incorporation was filed in the State of Delaware on October 11, 1995; and it is a wholly owned subsidiary of General Dynamics Corporation (GDC), a corporation organized under the laws of Delaware and headquartered in Falls Church, Virginia.

3. JBHA is a California sole proprietorship having its principal place of business at 4656 Mission Bell Lane, La Mesa, CA 91941, which has been its principal place of business for all times relevant to this action.

4. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332(a)(1) because (i) the matters in controversy exceed the sum or value of $75,000 exclusive of interest and costs, and (ii) the dispute is between business entities of different states—namely California and Delaware, and Italy.

5. This Court has personal jurisdiction over Defendants because the Defendants' business activities are conducted within the territorial confines of this judicial district and division as shown in Exhibit 1, a true and correct copy of JBHA's La Mesa, CA Business License, which is current and which dates from at least 1995.

6. Venue is proper in this judicial district and division pursuant to 28 U.S.C. §1391(b) because a substantial portion of the events giving rise to the claims herein alleged occurred in this judicial district and division.

## II. BACKGROUND FACTS

7. On or about January 21, 1996, GSE contracted with JBHA, appointing JBHA as GSE's exclusive representative in North America to sell all of its product and services related to its line of flexible hyperbaric chambers—and which the parties have extended to monetize GSE's products to the United States Government (the "Agreement"). JBHA signed the Agreement in La Mesa, CA. A true and correct copy of the Agreement is attached as Exhibit 2 hereto.

8. The Agreement, renewed by conduct and written affirmations of its parties, has been used to conduct business between GSE and JBHA from January 21, 1996 to 2014; during this 18-year period that JBHA conducted such business from its base in La Mesa, CA.

9. The most recent conduct of business between GSE and JBHA under the Agreement was September 2014 as shown in Exhibit 3, a true and correct copy of invoices between GSE and JBHA dated 29 August

2014 and 10 September 2014 under the Agreement. These invoices were paid-in-full by GSE.

10. On information and belief, GDEB is a prime contractor (the "Prime Contractor" and "GDEB") under the U.S. Special Operations Command ("USSOCOM" or "SOCOM"), for a particular $44.3 million contract, dated on or about December 2012 (the "Prime Contract"), for building and delivering a mini-submarine User Operational Evaluation System (the "UOES3") including a mini-submarine (the "Mini-sub") to USSOCOM, under USSOCOM's Dry Combat Submersible-Light (DCS-L) program.

11. On information and belief, GSE is a subcontractor (the "Subcontractor" and "GSE") of GDEB under the Prime Contract; and GSE has delivered to GDEB the Mini-sub, a deliverable under the Prime Contract.

12. Between 1996 and 2011, JBHA, acting under the Agreement, worked with USSOCOM, GDEB, and GSE to encourage USSOCOM to adopt commercial Mini-sub physical and performance attributes that were compatible with the Subcontractor's Mini-sub-like physical and performance attributes; and worked with the Prime Contractor to inform it of the Subcontractor's long-history of mini-submarine

designs and construction expertise, which aligned with USSOCOM's UOES3 Mini-sub physical and performance attributes.

13. Upon information and belief that Mr. Giunio Santi—an owner of GSE—and signatory on the Agreement—("Santi") declared that he did not want to deal directly with USSOCOM, causing JBHA principals Joseph Hughes and John Schiltz to establish a plan and initiate efforts to find a significant and viable US Company to integrate GSE's mini-sub into a system that would meet the USSOCOM UOES3 Mini-sub physical and performance attributes.

14. In their efforts to find a significant and viable US Company to integrate GSE's mini-sub, JBHA principals Joseph Hughes and John Schiltz surveyed the competitive landscape (including Northrop Grumman, Lockheed Martin, Raytheon, Boeing, Oceaneering, Battelle, and GDEB), and decided the strongest company to lead the effort would be GDEB.

15. Upon information and belief GDEB would be the strongest company to lead the effort, JBHA principal, Joseph Hughes, worked with his close connection, Gordon England, former Secretary of the Navy and past General Dynamics Corporation Executive to encourage GDEB to

become the prime contractor with GSE as its subcontractor under USSOCOM's Dry Combat Submersible-Light (DCS-L) program.

16. Upon information and belief through Mr. England, JBHA principals Joseph Hughes and John Schiltz spoke directly with GDEB President, John Casey.

17. On or about November 2011, JBHA, acting under the Agreement, arranged for GDEB management (John Casey, President, GDEB) to encourage GDEB staff (Franz Edson, GDEB Director, Mission Systems and Business Development, "Franz Edson") to consider becoming the US partner of GSE for the purpose of USSOCOM's UOES3 Mini-sub procurement under the under USSOCOM's Dry Combat Submersible-Light (DCS-L) program.

18. Upon information and belief, on or about November 2011, Santi—acting under the Agreement, indicated that GSE was very interested in this JBHA acquisition strategy and that GSE's current family of commercial mini-subs was perhaps viable.

19. On or about November 6, 2010, Santi—acting under the Agreement, in his email to JBHA stated "…we would like to host you for December with all travel expenses and accommodation for our account"; referring to GSE hosting a vendor review meeting in Italy at

Subcontractor's facilities—with Prime Contractor personnel, specifically regarding GSE's abilities to meet or exceed USSOCOM's UOES3 Mini-sub physical and performance attributes.

20. On or about November 7, 2010, Santi sent an email to JBHA principal John Schiltz restating that the 10% commission is available to JBHA if JBHA is able to facilitate a sale of GSE mini-subs for the USSOCOM Program.

21. Upon information and belief, JBHA principal John Schiltz thanked Mr. Santi and accepted the challenge for JBHA that same day in a return email dated Nov 7, 2010.

22. Upon information and belief, JBHA principals Joseph Hughes and John Schiltz prepared a plan to persuade the Prime Contractor to visit Mr. Santi and tour the GSE facility in Italy in December 2010.

23. Upon information and belief after several phone discussions, JBHA principals Joseph Hughes and John Schiltz persuaded Franz Edson, Director, and one of the GDEB engineers to join JBHA in a visit to GSE, which occurred December 13-16, 2010.

24. On or about December 13-16, 2010, JBHA, acting under the Agreement, and working directly with Santi, arranged for, attended, and managed a pre-contract vendor review meeting in Italy at

Subcontractor's facilities—with Prime Contractor and USSOCOM personnel in attendance; during which UOES3 Mini-sub physical and performance attributes—were reviewed by attendees, including Santi, relative to Subcontractor's UOES3 Mini-sub-like physical and performance attributes.

25. Upon information and belief, although Franz Edson and his associate, Carl Fast, were initially dubious that GSE could produce a winning mini-sub for USSOCOM; but by the end of the first visit they were impressed and, in fact, agreed to a return visit in early 2011, which also included key USSOCOM and NAVSEA decision makers.

26. On or about January 5, 2011, JBHA, acting under the Agreement, encouraged a second GDEB-GSE meeting with USSOCOM personnel; logistics of which were coordinated by GDEB's Franz Edson.

27. Upon information and belief JBHA principals, Joseph Hughes and John Schiltz, strongly recommended to Santi that JBHA accompany GDEB on the return visit to GSE.

28. Upon information and belief, Santi decided not to have JBHA principals Joseph Hughes and John Schiltz accompany GDEB on the return visit to GSE in Italy.

29. On or about January 19-20, 2011, JBHA, acting under the Agreement, arranged for, but did not attend, a second pre-contract vendor review meeting in Italy at Subcontractor's facilities—with Prime Contractor wherein Prime Contractor and Subcontractor agreed in a signed writing to participate in USSOCOM procurement cycle that ultimately resulted in USSOCOM awarding Prime Contractor the Prime Contract.

30. On or about January 26, 2011, GDEB (Franz Edson) stated:

    a. Trip [second pre-contract vendor review meeting in Italy at Subcontractor's facilities] went very well, <u>Gov't group was very impressed with the vehicle as well as the approach to certification</u>. To cut to the chase, we and the Gov't agreed the best approach is to wait for the BAA to come out and respond accordingly, including potential fabrication or lease.
    b. ****
    c. <u>We sent our Marketing Licence [sic] for approval today, we are presently drafting a Teaming Agreement with GSE</u>. Giunio, Dan and myself are in agreement regarding our plan forward. <u>Giunio stressed that he does not want multiple customers, he wants to work directly for us</u>. We all agree that we need to treat this relationship as business sensitive until after the BAA response." (emphasis added).

31. On or about March 4, 2011, Santi emailed JBHA:

    a. Joe,
    Sorry for the delay in answering your message below but since <u>we are about to sign a "Non Disclosure Agreement" following your promotion</u> the <u>same does not allow me to copy you any of our correspondence nor to let you deal directly with our would be Customer</u>.

> Therefore, while <u>the gentlemen's agreement between us still stands</u>, unfortunately this does not empower you to dialogue with Franz directly on our behalf.
> Giunio

32. Upon information and belief, after intense negotiations between GSE and GDEB, they signed a Teaming Agreement to move forward with the USSOCOM Dry Combat Submersible - Light (DCS-L) competition.

33. Upon information and belief, GSE and GDEB jointly submitted a proposal that resulted in an award from USSOCOM of a $44.3 million contract in December 2012 to GDEB for the Dry Combat Submersible-Light (DCS-L) program. The contract included building a UOES3, which specified a mini-sub to be provided by GDEB partner, GSE in Italy, and which committed GSE to design and deliver the mini-sub system.

34. Upon information and belief, the USSOCOM contract issued to GDEB, with GSE as Subontractor, and which a three-year phase II research and development letter contract (the Prime Contract) that called for the design, build, test and delivery of a complete commercially classed prototype dry combat submersible system.

35. Upon information and belief, GDEB designers worked on the Prime Contract in the U.S. and in Italy.

36. Upon information and belief, the USSOCOM Prime Contract to GDEB included engineering plans that called for the inclusion of a standard suite of submersible navigation systems, gyroscopes, sonar, and obstacle avoidance technology.

37. Upon information and belief, Franz Edson said the UOES3 was to be built to commercial specifications through a partnership between GDEB and GSE.

38. On or about October 26, 2012, InsideDefense.com Announced:

   a. The Pentagon has authorized foreign shipyards to construct up to two prototype vessels or major components for its Dry Combat Submersible development program, [sic] the commander of U.S. Special Operations Command has informed Congress.

39. On or about December 7, 2012, Prime Contractor was awarded Prime Contract

   a. Solicitation Number: SORDAC-M-UDCSL Notice Type:
   b. Award Notice Contract Award Date: December 7, 2012
   c. Contract Award Number: H92222-13-C-0006
   d. Contract Award Dollar Amount: Not to Exceed $44,269,290 including all options
   e. General Dynamics Electric Boat Corporation (GDEB)
   f. Synopsis: Added: Dec 10, 2012
   g. Description: The United States Special Operations Command (USSOCOM) awarded a phase II research and development Letter contract for a dry combat submersible User Operational Evaluation System (UOES), in accordance with BAA PMUS-11-DCSL. This effort includes the design, construction, test, and delivery of a complete, commercially-classed prototype dry combat submersible system. The options included in the contract are for support of

       Government testing. The total contract duration is 36 months including options.

   h. Place of Performance: The development, design, construction, and testing will be performed in the United States and Italy.

40. On or about January 30, 2014, Defense Tech reported:

   a. "U.S. Special Operations Command and sub-maker Electric Boat have partnered up to develop a dry submersible mini-submarine designed to deliver Navy SEALs into hostile, high-threat areas beneath the surface of the ocean.

   b. The 31-foot long underwater vehicle, called the User Operational Evaluation System 3, can carry as many as six people. It is currently being tested and developed through a three-year, $44 million contract with General Dynamics Electric Boat.

   c. \*\*\*\*

   d. The UOES 3 is currently being built to commercial specifications through a partnership between General Dynamics Electric Boat and an Italian firm called Giunio Santi Engineering, or GSE, Edson explained. The idea behind using commercial specifications is to leverage the best and most cutting-edge existing technology while working to keep costs lower, he said."

41. Upon information and belief, in 2014 GDEB reported that the UOES3 pressure hull and motor were built and were slated for key tests.

42. Upon information and belief, Franz Edson, acting as GDEB Director, Mission Systems and Business Development, has stated that [the Prime Contract] engineering plans call for the inclusion of a standard suite of submersible navigation systems, gyroscopes, sonar and obstacle avoidance technology.

43. Upon information and belief, Capt. Aandahl, USSOCOM spokesman, stated that the [UOES3] Mini-sub will undergo developmental testing and early operational assessment at least through fiscal year 2015.

44. To date, Subcontractor, GSE has refused to acknowledge to JBHA that it has delivered UOES3 Mini-sub under the Prime Contract through Prime Contractor to USSOCOM; which ripens payment by GSE under the Agreement with JBHA.

45. To date, Subcontractor, GSE has refused to honor the Agreement by paying JBHA per the Agreement—monies earned by JBHA under the Agreement resulting from GSE receiving the Subcontract from the Prime Contractor, delivering the UOES3 Mini-sub, and being paid for that delivery by the Prime Contractor.

46. Upon information and belief, GDEB, acting as the Prime Contractor, controls GSE, its Subcontractor, acts in concert with GSE for all purposes relevant to this Complaint, and shares in profits earned from the Prime Contract with GSE; and therefore GDEB has been unjustly enriched by GSE's unlawful conduct as described herein.

47. JBHA seeks damages and injunctive relief under the law of the State of California for herein alleged unlawful acts by Defendants, including (i) breach of contract and (ii) unjust enrichment.

**III.   COUNT 1:** BREACH OF CONTRACT UNDER CALIFORNIA LAW

(against Defendant, GSE)

48. This Count I is a claim for breach of contract arising under the law of the state of California.

49. The allegations of Paragraphs 1 through 47 are incorporated herein by reference with the same force and effect as if set forth in full below.

50. GSE entered into a valid, binding and enforceable agreement (the Agreement) with JBHA, the terms, obligations, and requirements of which are found in the Contract.

51. According to the Agreement, GSE agreed to pay JBHA in good faith a 10% commission to monetize its products to the United States Government and related entities—which GSE affirmed included bringing USSOCOM's UOES3 Mini-sub business to GSE under the under USSOCOM's Dry Combat Submersible-Light (DCS-L) program.

52. JBHA performed all of the requisite obligations and duties required by the Agreement, including influencing the US Navy and USSOCOM to use a vehicle built by GSE to commercial standards, finding an appropriate partner for GSE in the US submarine business (GDEB), exercising top level influence on that partner to get him to consider

teaming with GSE, and accompanying that partner to Italy to investigate a possible teaming relationship—which resulted in GSE and GDEB signing a written agreement (the "Teaming Agreement") to jointly participate, as Prime Contractor and Subcontract, in the USSOCOM procurement cycle that resulted in USSOCOM awarding Prime Contractor the Prime Contract on or about January 19-20, 2011. <u>At the time GSE and GDEB signed this Teaming Agreement, January 19-20, 2011, JBHA's performance under the GSE-JBHA Agreement was fully executed</u>.

53. Defendant, GSE materially and wholly breached the Agreement by deceptively refusing to include JBHA in communications between GSE and GDEB and refusing to allow JBHA to attend (at their own expense) such further meetings between GSE and GDEB.

54. Defendant, GSE engaged in efforts designed to deliberately close JBHA out of the USSOCOM mini-sub program after GSE and GDEB signed their teaming agreement and non-disclosure agreement.

55. The Agreement contained an implied covenant of good faith and fair dealing that obligated Defendant, GSE to perform the terms and conditions of those agreements in a manner that was fair and in good faith, and therefore conversely to refrain from doing any acts (or

omissions) that would impede JBHA from performing any or all of the conditions of the Contract which it agreed to perform. Such covenants obligated Defendant, GSE to refrain from doing any acts which would deprive JBHA of the benefits of the Contract. Such covenants of good faith and fair dealing further obligated Defendant, GSE to deal with JBHA fairly, honestly and reasonably, and to include JBHA in all dealings regarding the relationship with GDEB on the USSOCOM mini-sub. GSE did not so do.

56. Defendant, GSE breached the Agreement without good, sufficient or justified cause, for reasons extraneous to the Agreement, and as a direct and/or proximate result, frustrated and impeded JBHA's enjoyment of benefits derived from the Agreement, and its ability to monetize the extensive efforts that JBHA had expended.

57. GSE thereby breached the Agreement to cooperate with JBHA in the pursuit of the USSOCOM mini-sub business through GDEB.

58. Likewise, GSE breached its implied covenant of good faith and fair dealing by converting the JBHA efforts on GSE's behalf into ongoing business with GDEB for the USSOCOM mini-sub business.

59. JBHA has suffered damages as a direct and proximate result of Defendant, GSE's breach.

**COUNT II UNJUST ENRICHMENT UNDER CALIFORNIA LAW** (against all Defendants, GSE and GDEB)

60. This Count II is a claim for unjust enrichment arising under the common law of the state of California.

61. The allegations of Paragraphs 1 through 59 are incorporated herein by reference with the same force and effect as if set forth in full below.

62. JBHA has been damaged by Defendants, GSE's and GDEB's acts and omissions which have resulted in unjust enrichment to GSE and GDEB. These acts include Defendants, GSE and GDEB allowing JBHA's extensive long term efforts to go unrewarded, the result of which was to influence USSOCOM to use a modified GSE vehicle built and certified to commercial standards to meet the USSOCOM mini-sub requirements, and to find an appropriate partner for dealing with USSOCOM on GSE's behalf.

63. Because the opportunity for USSOCOM to utilize a modified GSE vehicle built and certified to commercial standards to meet the USSOCOM mini-sub requirements with an appropriate strong system integrator had been significantly developed, perfected, optimized and/or promoted by JBHA—and are being used and enjoyed by Defendants, GSE and GDEB—this allowed GSE to step into the shoes

of JBHA, employ an already developed market, and divert JBHA's long term efforts on GSE's behalf to itself. In turn, Defendants, GSE and GDEB (both directly and through wholly owned subsidiaries) now monetize, benefit and enjoy rights to the UOES3 program that JBHA brought to the GSE and GDEB team.

64. This aforementioned unjust enrichment has damaged JBHA in an amount that will be ascertained and determined at trial.

## IV. PRAYER

**WHEREFORE**, JBHA respectfully prays that this Court enter such preliminary and final orders and judgments as are necessary to provide it with the following relief:

A. A preliminary and then permanent injunction enjoining Defendants, GSE and GDEB, together with their officers, agents, employees, attorneys, heirs, successors and assigns, and all those in privity with them, from transferring any more of JBHA's rightful commission from GDEB to GSE resulting from the Prime Contract including building a UOES3 Mini-sub, using a mini-sub provided by GDEB partner, GSE, which committed GSE to design and deliver the mini-sub system;

B. An Order requiring Defendants, GSE and GDEB, and any of Defendants, GSE's or GDEB's affiliate and/or subsidiary businesses to return and/or

transfer of all of JBHA's rightful commission from GDEB to GSE resulting from the Prime Contract including building a UOES3, using a mini-sub provided by GDEB partner, GSE, which committed GSE to design and deliver the mini-sub system to JBHA that are now under the Defendants', GSE's or GDEB's, direct and/or indirect possession and control;

C. Entry of a final money judgment awarding JBHA its actual damages and the Defendants' profits;

D. An award of compensatory damages and attorney's fees;

E. An award of punitive damages for the Defendants' willful conduct;

F. An award of JBHA's taxable costs and attorney's fees; and

G. Such other relief as the Court deems appropriate.

REQUEST FOR JURY TRIAL

JBHA requests a trial by jury for all claims so triable.

Respectfully submitted, this ____ day of December, 2015.

s/Michael C. Keeling
Michael C. Keeling
State Bar No. 279662
120 C Avenue, Suite 120
Coronado, CA 92118
Tel:   (602) 332-0341
Fax:  (602) 467-3289
Mike@keelinglaw.org

**COUNSEL FOR Plaintiff**
**J.B. HUGHES AND ASSOCIATES**