IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| J.B. HUGHES AND ASSOCIATES | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:16-CV-00114- |
| | § | DMS-JMA |
| | § | |
| Giunio Santi Engineering and | § | Hon. Dana M. Sabraw |
| General Dynamics Electric Boat, | § | |
| Defendants. | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANT, GENERAL DYNAMICS ELECTRIC BOAT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND REQUEST FOR LEAVE TO AMEND PURSUANT TO RULE 15(A)**

PLAINTIFFS' RESPONSE TO DEFENDANT, GENERAL DYNAMICS ELECTRIC BOAT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

JBHA Response to FAC 12b6 motion                                        Page - i

# Table of Contents

| SECTION | Page |
|---|---|
| I. INTRODUCTION | 1 |
| II. KNOWLEDGE AND INTENT: Plaintiff's alleged facts are sufficient for GDEB to be a knowing defendant of the tort of intentional interference with contract and intentional interference with prospective economic advantage. | |
|    A. KNOWLEDGE: Because the FAC provided the Court with facts showing JBHA informed GDEB of the JBHA-GSE agreement, JBHA alleged that GDEB had sufficient knowledge of the JBHA-GSE agreement. | 2 |
|    B. INTENT: Because the FAC provided the Court with facts and pleaded those facts showing GDEB desired the consequences of its acts resulting in interference with the JBHA-GSE contract and JBHA's prospective advantage, JBHA sufficiently plead that GDEB knew the JBHA-GSE contract interference was certain or substantially certain to occur as a result of GDEB's action. | 2 |
|    C. Because of GDEB's acts, as itemized in paragraphs 6 and 10, proximate causality exists between these itemized acts of GDEB and harm suffered by JBHA. | 11 |
| III. Plaintiff alleges facts sufficient for the tort of intentional interference with prospective economic advantage—and hereby alleges that GDEB's underlying legal wrong is its wrongful conduct rising to Unfair Competition. | 11 |
|    A. Based on Facts alleged in FAC, Ex. 4, JBHA hereby alleges that GDEB Intentionally engaged in wrongful conduct, Unfair Competition, that interfered with and disrupted the JBHA-GSE Relationship and which is wrongful apart from the prospective interference claim itself. | 11 |
|    B. JBHA requests leave to amend the FAC to allege that GDEB committed an act of "unfair competition" with regard to JBHA. | 14 |
| IV. Because the FAC adequately plead independent torts supporting Claim of Unjust Enrichment (Count IV), the Court should allow Plaintiff to proceed with Count IV. | 14 |
| V. CONCLUSION AND PRAYER | 15 |

PLAINTIFFS' RESPONSE TO DEFENDANT, GENERAL DYNAMICS ELECTRIC BOAT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

JBHA Response to FAC 12b6 motion                                               Page - ii

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.B. HUGHES AND ASSOCIATES § <br> Plaintiff, § <br> § <br> v. § <br> § <br> § <br> Giunio Santi Engineering and § <br> General Dynamics Electric Boat, § <br> Defendants. § | CIVIL ACTION NO. 3:16-CV-00114-DMS-JMA <br><br> Hon. Dana M. Sabraw |

**PLAINTIFFS' RESPONSE TO DEFENDANT, GENERAL DYNAMICS ELECTRIC BOAT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND REQUEST FOR LEAVE TO AMEND PURSUANT TO RULE 15(A)**

Plaintiff J.B. Hughes and Associates ("JBHA" or "Plaintiff"), through its undersigned counsel responds to Defendant, General Dynamics Electric Boat's Motion To Dismiss Plaintiff's First Amended Complaint as follows.

**I. INTRODUCTION**

General Dynamics Electric Boat ("GDEB") purports in its Memorandum In Support Of Motion To Dismiss ("MSMD") that it should not be a party to this litigation because the First Amended Complaint ("FAC") fails to state claims for intentional interference with contractual relations, intentional interference with prospective economic advantage, or unjust enrichment (Counts II-IV).

1.     Specifically, regarding JBHA's claim of intentional interference with contractual relations (Count II) and claim of intentional interference with prospective economic advantage (Count III), GDEB purports the following.

PLAINTIFFS' RESPONSE TO DEFENDANT, GENERAL DYNAMICS ELECTRIC BOAT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

JBHA Response to FAC 12b6 motion                              Page - 1

1.1. JBHA does not allege that GDEB had sufficient knowledge of the relevant contractual provisions—in particular, GSE's obligation to pay a 10% commission.

1.2. Because GDEB cannot intend the breach of a contractual provision of which it is unaware, the FAC likewise fails to allege the requisite intentional conduct.

1.3. There is no causal connection between GDEB's supposedly intentional acts and GSE's decision not to pay JBHA a commission.

2. Additionally, regarding JBHA's claim of intentional interference with prospective economic advantage (Count III), in the MSMD, GDEB purports JBHA neglected to allege that GDEB engaged in any independently wrongful conduct.

3. Also, regarding JBHA's claim of unjust enrichment (Count IV), in the MSMD, GDEB purports it fails because it is not a standalone claim under California law.

4. Below, JBHA shows that it has pleaded with sufficient alleged facts, presented in First Amended Complaint ("FAC") including Exhibit 4 ("Ex. 4"), for each of the above Counts. This response follows the GDEB's order-of-issues (combining common elements of Counts II and III).

**II. KNOWLEDGE AND INTENT: Plaintiff's alleged facts are sufficient for GDEB to be a knowing defendant of the tort of intentional interference with contract and intentional interference with prospective economic advantage**.

**A. KNOWLEDGE: Because the FAC provided the Court with facts showing JBHA informed GDEB of the JBHA-GSE agreement, JBHA alleged that GDEB had sufficient knowledge of the JBHA-GSE agreement**.

5. Contrary to GDEB's ascertains, California law regarding alleging sufficient knowledge of relevant contractual provisions—for both interference with contract

PLAINTIFFS' RESPONSE TO DEFENDANT, GENERAL DYNAMICS ELECTRIC BOAT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

JBHA Response to FAC 12b6 motion                                                Page - 2

and interference with prospective economic advantage—is as articulated by the California Supreme Court in *Korea*:

    5.1. "[C]onclude[d] that the tort of intentional interference with prospective economic advantage <u>does not require a plaintiff to plead that the defendant acted with the specific intent</u>, or purpose, of disrupting the plaintiffs prospective economic advantage. Instead, <u>to satisfy the intent requirement for this tort, it is sufficient to plead that the defendant knew that the interference was certain or substantially certain to occur as a result of its action</u>." *Korea Supply Co.*, 29 Cal. 4th at 1179 (underlining added).

6. Here, GDEB had knowledge of the existence of the JBHA-GSE Contractual Relationship and related "course of dealing" as shown by the below stated FAC Exhibit 4, facts—and their reasonable inferences.

    6.1. (Ex. 4 ¶ 36.), 10 Nov 2010 internal JBHA email memorializing JBHA consultant, Gordon England (a past Vice President of General Dynamics Corporation and as agent of JBHA) communicated with then GDEB President, John Casey—urging GDEB to agree to prime contract with SOCOM and to subcontract with GSE for delivery of mini-sub requirements per the SOCOM BAA[1].

    6.1.1. This fact infers that the GDEB president, John Casey, had awareness of JBHA's objective of positioning GSE as a subcontractor of GDEB for supplying mini-subs to SOCOM and "that awareness" was provided by JBHA to GDEB.

    6.2. (Ex. 4 ¶ 38.), 16 Nov 2010 email from JBHA to President of GDEB, John Casey RE: SOCOM DRY COMBAT SUBMERSIBLE stating: JBHA has "a viable candidate [GSE] to satisfy the recent SOCOM requirement for commercial minisubs that can be readily adapted for use by our Navy's SEALs as per the SOCOM BAA. … Joe and I have worked with Giunio Santi and his company

---

[1] Dry Combat Submersibles <u>Broad Agency Announcement</u> (BAA) for U.S. Special Operations Command (USSOCOM or SOCOM) as published in FedSources # FSI0063170. See Ex. 4 ¶ 75.

1  (Giunio Santi Engineering – GSE) out of Zingonia, Italy for more than 20 years. …
2  we brought forward Dr. Santi's [Santi is a GSE principal] 3gst9 minisub … for
3  evaluation by NAVSEA and the SEALs … We will be visiting GSE in early
4  December to witness some of the in-water testing of one version of GSE's
5  minisubs and hope it makes sense for GD Electric Boat (you and/or Franz Edson)
6  to come along – to see the minisub and to discuss business options with Giunio
7  Santi …"
8      6.2.1. This fact infers that GDEB President, John Casey, had knowledge that
9  JBHA was then working with GSE—and had been working with GSE for "more
10 than 20-years", specifically to link GSE to GDEB to supply mini-subs to SOCOM.
11     6.3.  (Ex. 4 ¶ 39.), 17 Nov 2010 email from Franz Edson, GDEB Director of
12 Business Development and Submarine Payload Integration, to JBHA RE: SOCOM
13 Submersible stating: "John Casey [then GDEB President] asked me to forward my
14 contact info.  I believe you, Joe, and I met many years ago.....pursuing essentially
15 the same program! We [GDEB] are interested in seeing the vehicle …"
16     6.3.1. This fact infers that Franz Edson, Director of Business Development
17 and Submarine Payload Integration had knowledge that JBHA was then working
18 with GSE—and had been working with GSE for "more than 20-years", specifically
19 to link GSE to GDEB to supply mini-subs to SOCOM. And, because GDEB
20 desired to "see" the vehicle. This fact further infers that GDEB at least desired to
21 understand whether GDEB needed to control introduction of the GSE mini-subs to
22 SOCOM by GDEB or GDEB's competitors.
23     6.4.  (Ex. 4 ¶ 41.), 17 Nov 2010 email from JBHA to GDEB, Franz RE:
24 SOCOM Submersible stating: "Yes, Joe & I both recognized your name when John
25 Casey said you were the EB POC for this opportunity. The visit dates to meet
26 Giunio and his team, see the in-water tests and tour the GSE facility in Zingonia,
27 Italy are tentative.  However, Dr. Giunio Santi asked that we come sometime in

December, before Christmas, so as to see the testing before it is complete. Joe and I look forward to working with you and EB".

    6.4.1. This fact infers that Franz Edson had knowledge that JBHA was then working with GSE, specifically to link GSE to GDEB to supply mini-subs to SOCOM.

  6.5. (Ex. 4 ¶ 43.), 18 Nov 2010 email from JBHA to GDEB, Franz Edson RE: SOCOM Submersible stating: "I will have GSE vehicle parameters to you by tomorrow. Regarding visit to GSE in Italy, are there better dates in Dec (than 10-14 Dec) for you to accompany Joe and me?"

    6.5.1. This fact infers that Franz Edson had knowledge that JBHA was then commissioned by GSE to provide to GDEB specific GSE mini-subs vehicle parameters—as related to SOCOM minisubs—because JBHA was privy to highly confidential GSE vehicle [minisub] parameters.

  6.6. (Ex. 4 ¶ 44.), 19 Nov 2010 email from JBHA to GDEB, Franz RE: SOCOM Submersibles stating: "GSE has built many minisubs; all designed around an initial 10 meter boat, however changing the length is trivial. GSE can deliver a 6, 8, 10, 12 or a 14 meter boat to meet the SOCOM Dry-Shallow Water Combat Submersible (D-SWCS) requirements (Operable from a submarine with a lengthened & modified Dry Deck Shelter - approximately 24 foot length overall). Here are two versions (10 meter & 14 meter), with characteristics. I will provide characteristics for an 8 meter version on Monday."

    6.6.1. This fact infers that GDEB, through Franz Edson, had knowledge that JBHA, through GSE, could provide to GDEB the GSE mini-subs vehicle parameters— customized to meet the SOCOM Dry-Shallow Water Combat Submersible (D-SWCS) requirements because JBHA was privy to GSE vehicle [minisub] parameters.

PLAINTIFFS' RESPONSE TO DEFENDANT, GENERAL DYNAMICS ELECTRIC BOAT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

JBHA Response to FAC 12b6 motion      Page - 5

6.7. (Ex. 4 ¶ 45.), 19 Nov 2010 inter-JBHA email reporting: "[GDEB President] John Casey … [is] very interested in the Italian mini-subs and said that he might be able to extend his trip to England that was planned for early to mid December and join us in Italy, to see the latest of the Giunio Santi Engineering (GSE) mini-subs."

    6.7.1. This fact infers that the president of GDEB had sufficient knowledge and was sufficiently interested in the GSE mini-subs that he—himself would consider traveling to Italy to "see" the GSE mini-subs, after JBHA introduced him to the GSE mini-subs.

6.8. (Ex. 4 ¶ 49.), 26 Nov 2010 email from GDEB to JBHA, Franz Edson RE: SOCOM Submersible, GDEB stating: "What is important is actually seeing the vehicle and talking to someone knowledgeable about what types of changes are possible.....all in advance of a TAA".

    6.8.1. This fact infers that the president of GDEB, John Casey, had conveyed to his Director of Business Development and Submarine Payload Integration, GDEB's desire to travel to Italy to "see" the GSE mini-subs.

6.9. (Ex. 4 ¶ 56.), 20 Dec 2010 inter-JBHA email wherein Gordon England, a past GD executive, indicated his recognition to JBHA that "this will be the culmination of your multi-year effort"; and that "EB will now integrate this [GSE] knowledge with other program inputs to decide how to proceed".

    6.9.1. This fact infers that GDEB desired to travel to Italy to "now integrate" the "knowledge" of the GSE mini-subs "with other program inputs to decide how to proceed" to win the SOCOM business.

6.10. (Ex. 4 ¶ 66.), 07 Jan 2011, intra-JBHA email, RE: SUMMARY – GDEB/Franz Edson PHONE CALL, stating: "… Joe & I explained our role (again) – we are representing GSE and working to ensure a business relationship between GSE and GDEB can be established for the SOCOM Dry Combat Submersible

PLAINTIFFS' RESPONSE TO DEFENDANT, GENERAL DYNAMICS ELECTRIC BOAT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

JBHA Response to FAC 12b6 motion      Page - 6

(DCS) Program. Joe & I also explained how we (Joe) know Gordon England and his role in supporting this GDEB – GSE relationship and the success of the SOCOM DCS Program. Franz promised to provide us a feedback report from his trip…"

  6.10.1. This fact—shows that JBHA directly stated to GDEB/Franz Edson that JBHA is "representing GSE and working to ensure a business relationship between GSE and GDEB can be established for the SOCOM Dry Combat Submersible (DCS) Program".

  6.10.2. This fact—also shows JBHA directly stated to GDEB/Franz Edson that Gordon England is supporting this GDEB – GSE relationship and the success of the SOCOM DCS Program. Thus, as of 07 Jan 2011, GDEB had specific knowledge of the GDEB – GSE agreement and the objective of that agreement was to arrange the supply of GSE mini-subs under the SOCOM DCS Program.

 6.11. (Ex. 4 ¶ 87.), 10 Mar 2011 email from JBHA to GDEB, Franz RE Dry Combatant Submersible, stating: "The JB Hughes addition [to the GDEB-GSE NDA] is simply to support GSE – no other reason."

  6.11.1. This fact—shows that JBHA directly stated to GDEB/Franz Edson that JBHA's sole function in their relationship as to support GSE in its SOCOM DCS Program subcontracting efforts. Thus, it can be inferred that if GDEB were to wrongfully disrupt JBHA-GSE relationship—that would cause JBHA severe loss.

**B. INTENT: Because the FAC provided the Court with facts and pleaded those facts showing GDEB desired the consequences of its acts resulting in interference with the JBHA-GSE contract and prospective advantage, JBHA sufficiently plead that GDEB knew the JBHA-GSE contract interference was certain or substantially certain to occur as a result of GDEB's action**.

PLAINTIFFS' RESPONSE TO DEFENDANT, GENERAL DYNAMICS ELECTRIC BOAT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

JBHA Response to FAC 12b6 motion  Page - 7

7. The Supreme Court of California, in *Korea*, explaining the intent requirement[2] for intentional interference with (contract or) prospective economic advantage, referencing the Restatement Second of Torts, specifically refers to the intent requirement defined in section 766, comment j[3]. It noted that the Restatement refers to the definition of intent in section 8A, which states:

   7.1. "The word `intent' is used throughout the Restatement [Second] of [Torts] to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to derive from it." (Rest.2d Torts, § 8A.).

   7.2. Comment b to this section clarifies that: "[i]ntent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result." (Rest.2d Torts, § 8A, com. b, p. 15.).

8. The *Korea* Court agreed with the Restatement that: it is sufficient for the plaintiff to plead that the defendant "[knew] that the interference is certain or substantially certain to occur as a result of his action." (Rest.2d Torts, § 766B, com. d, p. 22.).

9. Thus, here, contrary to GDEB's MSMD ascertains, California law regarding alleging sufficient intent—for both interference with contract and interference with prospective economic advantage—is provided by the Supreme Court of California in *Korea*, where it:

   9.1. "[C]onclude[d] that the tort of intentional interference with prospective economic advantage <u>does not require a plaintiff to plead that the defendant acted with the specific intent</u>, or purpose, of disrupting the plaintiffs prospective economic advantage. Instead, <u>to satisfy the intent requirement for this tort, it is sufficient to plead that the defendant knew that the</u>

---

[2] Element 3 in *Buckaloo v. Johnson* (1975) 14 Cal.3d 815, 827, 122 Cal.Rptr 745.
[3] The Supreme Court of California also relied on this section of the Restatement in *Quelimane* to conclude that this tort contained no specific intent requirement. (*Quelimane,*19**Cal**.**4th** at p. 56, 77 **Cal**.Rptr.2d 709, 960 P.2d 513.)

interference was certain or substantially certain to occur as a result of its action." *Korea Supply Co.*, 29 Cal. 4th at 1179 (underlining added).

10.   And here, GDEB had required "intent" of the torts of intentional interference with contract and prospective economic advantage, regarding the JBHA-GSE Contract and related "course of dealing" as shown by the below stated FAC Exhibit 4, facts—and their reasonable inferences.

   10.1.   (Ex. 4 ¶ 82.), 04 Mar 2011 GSE to JBHA email wherein Santi [GSE] states "Sorry for the delay in answering your message below but since we are about to sign a "Non Disclosure Agreement" [with GDEB] following your [JBHA] promotion the same does not allow me to copy you any of our [GSE] correspondence nor to let you [JBHA] deal directly with our would be Customer".

       10.1.1.   This fact shows that GDEB crafted the GDEB-GSE NDA such that "the same [NDA] does not allow me [GSE] to copy you [JBHA] any of our correspondence nor to let you [JBHA] deal directly with our would be Customer [GDEB]".

       10.1.2.   This fact infers that GDEB is eliminating JBHA from any and all information flow or efforts-based-on-information-from-GSE. Wherein GDEB could be substantially certain that it would eliminate JBHA's participation as agent for GSE under the then existing JBHA-GSE contract and any future add-ons to the JBHA-GSE contract that might result from GSE subcontracting with GDEB for mini-sub deliveries under the SOCOM DCS Program, and causing JBHA severe loss associated with its current and future revenues from GSE.

   10.2.   (Ex. 4 ¶ 88.), 10 Mar 2011 email from GDEB to JBHA, stating: "we do not feel that it is in the best interest of all parties to add you to the team at this point, nor does it make sense to include you in a non-disclosure agreement"

PLAINTIFFS' RESPONSE TO DEFENDANT, GENERAL DYNAMICS ELECTRIC BOAT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

JBHA Response to FAC 12b6 motion                                                                 Page - 9

  10.2.1. This fact shows that GDEB decided to eliminate JBHA as a participant in GDEB's contracting with GSE for mini-sub deliveries under the SOCOM DCS Program.

  10.2.2. This fact infers that, in so doing, GDEB is substantially certain that it would eliminate JBHA's opportunity-seeking and advocacy for GSE under the existing JBHA-GSE contract and any future add-ons to the JBHA-GSE contract that might result from GSE subcontracting with GDEB for mini-sub deliveries under the SOCOM DCS Program, causing JBHA severe loss while benefitting GDEB (because GSE would be a weakened negotiator without JBHA support).

 10.3. (Ex. 4 ¶ 89.), 10 Mar 2011 email from GDEB to JBHA, stating: "We are fully committed to GSE. We don't think a relationship with … Hughes and Associates [JBHA] is appropriate at this time."

  10.3.1. This fact shows that GDEB was fully in support of subcontracting with GSE for mini-sub deliveries under the SOCOM DCS Program.

  10.3.2. This fact infers also that, in so doing, GDEB could be substantially certain that it would eliminate JBHA as a negotiating force on the part of GSE and against GDEB, as relates to GDEB's contracting with GSE for mini-sub deliveries under the SOCOM DCS Program, causing JBHA severe loss, while providing an equally higher profit for GDEB.

 10.4. (Ex. 4 ¶ 91.), 10 Mar 2011 internal JBHA email, relaying phone call between GSE and JBHA, stating: "He [Santi] knows he is going to need our [JBHA] help as the effort goes on, and he will ask Franz [GDEB] to include us [JBHA] on the GSE NDA when the need comes up … Giunio is very concerned about dealing with these guys [GDEB], but everyone is being very warm and fuzzy right now."

10.4.1.  This fact shows that GSE was not in support of eliminating JBHA from on-going contract discussions regarding GSE subcontracting for mini-sub deliveries under the SOCOM DCS Program.

10.4.2.  This fact infers that GDEB—not GSE—intended to eliminate JBHA as a negotiating force on the part of GSE and against GDEB, as relates to GDEB's contracting with GSE for mini-sub deliveries under the SOCOM DCS Program, causing JBHA severe loss, while providing an equally higher profit for GDEB.

**C. Because of GDEB's acts, as itemized in paragraphs 6 and 10 (above), proximate causality exists between these itemized acts of GDEB and harm suffered by JBHA.**

11.  The proximate causation issue is whether the Court should allow recovery where wrongful acts are directed towards a plaintiff having a prospective economic advantage, i.e., direct harm wherein the wrongful acts are not remote, indirect, or of derivative consequence. (*Korea Supply Co.*, 29 Cal. 4th 1134 at 1170 (2003).)

12.  Here, as itemized in paragraphs 6 and 10 (above), because GDEB's acts of interference were directed towards plaintiff, JBHA, and towards a third person, GSE, who was "in a relationship with the plaintiff", the acts were not remote or indirect, and their consequences are not derivative. Thus, under California law, as articulated in *Korea*, JBHA has pleaded facts that substantially show proximate causation between GDEB's acts of interference (itemized in paragraphs 6 and 10) and harm suffered by JBHA.

**III. Plaintiff alleges facts sufficient for the tort of intentional interference with prospective economic advantage—and hereby alleges that GDEB's underlying legal wrong is its wrongful conduct rising to Unfair Competition.**

**A. Based on Facts alleged in FAC, Ex. 4, JBHA hereby alleges that GDEB Intentionally engaged in wrongful conduct, Unfair Competition, that interfered with and disrupted the JBHA-GSE Relationship and which is wrongful apart from the prospective interference claim itself.**

PLAINTIFFS' RESPONSE TO DEFENDANT, GENERAL DYNAMICS ELECTRIC BOAT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

JBHA Response to FAC 12b6 motion                                           Page - 11

13. GDEB's underlying legal wrong is—unfair competition—under California Unfair Competition Law, California Business and Professions Code § 17200 et seq. ("UCL"). The UCL as relates to tort of intentional interference with prospective economic advantage (and interference with contract), third element, as the Supreme Court of California Court in *Korea*, iterated:

13.1. "we explicitly approved the trial court's modified version of the standard jury instruction on intentional interference with prospective economic advantage, BAJI No. 7.82. The instruction at issue … changed the third element to provide that the defendant "`intentionally engaged in *[wrongful]* acts or conduct designed to interfere with or disrupt' the relationship." (*Delia Penna,* at p. 380, fn. 1, 45**Cal**. Rptr.2d 436, 902 P.2d 740,* italics and brackets added).[4]

14. Thus, Unfair Competition, pursuant to the third element, prohibits unfair competition, including unlawful, unfair, and fraudulent business acts. CA Business and Professions Code section 17200 et seq. **"broadly prohibit unlawful, unfair, and fraudulent business acts"**. *Korea Supply Co.,* 131 Cal.Rptr.2d 29, 63 P.3d at 943. Unlawful acts are:

14.1. "anything that can properly be called a business practice and that at the same time is forbidden by law ... be it civil, criminal, federal, state, or municipal, statutory, regulatory, or court-made," where court-made law is, "for example a violation of a prior court order." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,* 319 F.Supp.2d 1059, 1074 & n. 22(C.D.Cal.2003).

14.2. "[A] practice may be deemed unfair even if not specifically proscribed by some other law." (Cel-Tech, at p. 180, 83 Cal. Rptr.2d 548, 973 P.2d 527.) Unfair acts among competitors means "conduct that … significantly

---

[4] The *Delia* Court clarified the plaintiff[']s burden as to the third element, stating that to meet this element, a plaintiff must plead and prove that the defendant's acts are wrongful apart from the interference itself. (*Della Penna v. Toyota Motor Sales, U.S.A., Inc*, 45 **Cal**.Rptr.2d 436, 902 P.2d 740, at p. 393.)

threatens or harms competition." <u>Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,</u> 20 Cal.4th 163, 83 Cal.Rptr.2d 548, 973 P.2d 527, 544 (1999).

15. JBHA standing for Unfair Competition. Regarding standing to sue under the UCL, competition actions can be brought by … "by any person acting for the interests of itself ..." (§ 17204.)

16. Under the UCL, "[s]ection 17200 does not require that a plaintiff prove that he or she was directly injured by the unfair practice or that the predicate law provides for a private right of action."[5] <u>Gregory v. Albertson's Inc.,</u> <u>104 Cal.App.4th 845, 128 Cal.Rptr.2d 389, 392 (2002)</u>.

17. Here, JBHA alleges that GDEB committed an act of "unfair competition" under the UCL because Franz Edson, then GDEB's Director of Business Development and Submarine Payload Integration, an officer of GDEB, acted as alleged below. And that such alleged acts, given reasonable inferences, resulted in injuring and weakening of "GSE's competitive position vis-à-vis GDEB"[6] by blocking JBHA's ability to continue collaborating with GSE for contracting and delivering GSE mini-subs to SOCOM through GDEB:

18. Knowing that JBHA had an existing agreement with GSE for contracting and delivering GSE mini-subs to SOCOM through GDEB, GDEB required GSE to sign a GDEB-GSE teaming agreement and nondisclosure agreement (NDA) forbidding GSE from discussing/sharing with JBHA the GDEB-GSE collaboration to contract and delivery mini-submarines to SOCOM—alleged based on Fact (Ex. 4 ¶ 73, 82.)

---

[5] CA Proposition 64 requires a private action be brought by "any person who has suffered injury in fact and has lost money or property as a result of such unfair competition." Cal. Bus. & Prof.Code § 17204.

[6] See *Silicon Knights, Inc. v. Crystal Dynamics, Inc*., 983 F.Supp. 1303, 1313 (N.D.Cal.1997).

PLAINTIFFS' RESPONSE TO DEFENDANT, GENERAL DYNAMICS ELECTRIC BOAT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

JBHA Response to FAC 12b6 motion                                    Page - 13

19. GDEB specifically excluded JBHA from being a party to the NDA or being allowed to be a party to the GDEB-GSE collaboration to contract and delivery SOCOM mini-subs—alleged based on Fact (Ex. 4 ¶ 82.)

20.  GSE signed the GDEB-GSE NDA—alleged based on Fact (Ex. 4 ¶ 82.)

21.  Whereinafter GSE honored the NDA by eliminating JBHA from participating as GSE's representative for selling GSE products to the US Government, all subsequent GDEB-GSE collaboration to contract and delivery SOCOM mini-subs—alleged based on Fact (Ex. 4 ¶¶ 82, 88.)

22.   Whereinafter GDEB was enabled to negotiate with a weakened GSE, which was effectively stripped of JBHA's negotiating abilities—alleged based on Fact (Ex. 4 ¶¶ 82, 88, 91.)

23.   Whereby JBHA has suffered a loss of money harm as a result of GDEB's wrongfully acquired competitive advantage—alleged based on Fact (Ex. 4 ¶¶ 73, 91, 93, 97, 102, 103.)

24.   Regarding ripening of JBHA's contract-based harm, JBHA completed its duties by about 26 Jan 2011, when GSE and GDEB signed their teaming agreement (Ex. 4 ¶ 73); 7 Dec, 2012 when SOCOM awarded to GDEB Contract Award Number: H92222-13-C-0006 for a not to Exceed amount of $44,269,290, having a 36-month duration (Ex. 4 ¶ 97); about 5 Apr 2016 delivery and testing of "31-foot Button 5.60 from General Dynamics/Electric Boat and Giunio Santi Engineering" (Ex. 4 ¶ 102); and per "Defense Department budget documents, $32.4 million had been invested in product development in the Button 5.60 [paid to GDEB] through fiscal 2015" (Ex. 4 ¶ 102).

**B. JBHA requests leave to amend the FAC to allege that GDEB committed an act of "unfair competition" with regard to JBHA**.

25. Because JBHA in the FAC provided facts supporting GDEB committed an act of "unfair competition" with regard to JBHA; now under Rule 15(a), JBHA requests leave to amend the FAC to allege that GDEB committed an act of "unfair competition" with regard to JBHA.

**IV. Because the FAC adequately plead independent torts supporting Claim of Unjust Enrichment (Count IV), the Court should allow Plaintiff to proceed with Count IV**.

26. Because the torts of intentional interference with contract and prospective economic advantage are independent standalone claims from the claim of Unjust Enrichment under California law, JBHA submits that GDEB's standalone claim argument is overcome by valid counts II and III.

**V. CONCLUSION AND PRAYER**

For the reasons stated herein, Plaintiff requests that the Court deny Defendant's Motion to Dismiss Plaintiff's First Amended Complaint with prejudice. Further, Plaintiff requests leave to amend the FAC to allege that GDEB committed an act of "unfair competition" with regard to JBHA.

Respectfully submitted, this 4th day of August, 2016.

> s/Michael C. Keeling
> Michael C. Keeling
> State Bar No. 279662
> 120 C Avenue, Suite 120
> Coronado, CA 92118
> Tel:   (602) 332-0341
> Fax:  (602) 467-3289
> Mike@keelinglaw.org

**COUNSEL FOR Plaintiff**
**J.B. HUGHES AND ASSOCIATES**

**CERTIFICATE OF SERVICE**

This is certify that on 4th day of August, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF, which will automatically send email notification of such filing to counsel of record for Plaintiff.

s/Michael C. Keeling
Michael C. Keeling
